1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13

| UNITED STATES OF AMERICA, | CASE NO. 10CR977-WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| ALISON K. HANNAH (1), | |
| Defendant. | |

14    HAYES, Judge:

15         The matter before the Court is the Petition alleging that the Defendant violated

16    the conditions of her supervised release.  (ECF No. 141).

17                           **BACKGROUND FACTS**

18         On March 28, 2011, Defendant Alison Hannah entered pleas of guilty to the

19    following six counts in the Indictment: Count 2 Bankruptcy Fraud in violation of 18

20    U.S.C. § 157(1); Count 3 Bank Fraud and aiding and abetting in violation of 18 U.S.C.

21    § 1344 and 2; Count 4 Concealment of Assets and aiding and abetting in violation of

22    18 U.S.C. § 152(1) and 2; Counts 7 and 8 False Statement under Penalty of Perjury in

23    violation of 18 U.S.C. §§ 152(3) and 2; and Count 11 Fraudulent Transfer of Assets and

24    aiding and abetting in violation of 18 U.S.C. § 152(7) and 2.  In the Plea Agreement,

25    Defendant Alison Hannah admitted that she "knowingly made up and participated in

26    a scheme to defraud by filing for bankruptcy in order to (1) stop collection of a state

27    court civil judgment against her, her husband, and Millhouse One, LLC and (2)

28    fraudulently obtain money from Union Bank of California that was lawfully ordered to

be used to satisfy the civil judgment." (ECF No. 93 at 4). Defendant admitted that the following fact was true and undisputed:

> On or about March 24, 2005, Defendant went to the Temecula Branch of the Union Bank of California and presented a fraudulent document titled "Order on Voluntary Petition Chapter 7 - United States Bankruptcy Code 11 U.S.C. 362(a)" ("the Order"). Defendant falsely represented to Union Bank and its employees that the Order was a lawfully issued court order and demanded release of $60,000 from the bank account in the name of Millhouse One, LLC, ....
> Defendant's statement to Union Bank that the Order was a legitimate bankruptcy court order was material in that it had the natural tendency to influence and did influence Union Bank to part with its money.

*Id*. Defendant further admitted that she fraudulently concealed specific items in her bankruptcy filings and willfully transferred specific items to another party with the intent to defeat the bankruptcy laws. *Id*. at 4-5.

On October 3, 2011, the Court sentenced the Defendant to serve a term of imprisonment of 24 months and a three year term of supervised release subject to the standard conditions of supervision and a number of special conditions of supervision. (ECF No. 135). The Judgment ordered that the Defendant shall pay restitution in the amount of $32,437.26 to the Union Bank "with the payment of any remaining balance to be made following the defendant's release from prison at the rate of $500.00 per month." *Id*. at 5. The Judgment further ordered Defendant to pay $600 in special penalty assessments.

Defendant was released from custody in April 2013 and began her term of supervised release.

On February 12, 2014, the Probation Officer submitted a Petition for Warrant or Summons for Offender Under Supervision which alleged that Defendant violated three conditions of her supervised release in that Defendant 1) refused to make any restitution payments; 2) failed to maintain regular employment; and 3) reported to the probation officer she has an active Washington State contractor's license. (ECF No. 141).

On February 18, 2014, the Court ordered that a "no-bail bench warrant be issued based upon a finding of probable cause to bring the offender before the court to show cause why supervised release should not be revoked for the alleged violations." *Id.* at

8.    A warrant for Defendant's arrest was issued the following day. (ECF No. 142).

On April 28, 2014, Defendant was arrested.

On April 29, 2014, Defendant appeared before the United States Magistrate Judge.  The Magistrate Judge found that there was probable cause to believe that a violation has been committed and ordered the Defendant held pending an order to show cause hearing before this Court.  (ECF No. 148).

On May 19, 2014, this Court held a hearing on the violation and set an evidentiary hearing for the following day.

On May 20, 2014, this Court held an evidentiary hearing.  The Government presented two witnesses.  The Probation Officer testified that Defendant met with her probation officer upon her release and reviewed the conditions of supervised release including the condition that she "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer" and the condition that she "work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons."  (ECF No. 135 at 3).  In addition, the probation officer reviewed with the Defendant the order that she pay restitution in the amount of $32,437.26 to Union Bank "at the rate of $500 per month."  *Id.* at 5.

The Probation Officer testified that she met with the Defendant in August 2013 and reviewed her conditions of release including the condition that she work regularly at lawful employment.  The Probation Officer testified that Defendant explained that she had various medical issues and could not be employed.  The Probation Officer discussed the payment of restitution with the Defendant noting that Defendant had made no restitution payments to date.

In October 2013, the Probation Officer arranged a meeting to review Defendant's finances in order to make an accurate assessment of the amount of payment Defendant would be able to make toward her financial obligation.  This meeting was attended by a representative of the U.S. Attorney Financial Litigation Unit, Defendant, Defense Counsel, and the Probation Officer.  At the meeting, it was agreed that Defendant would

10CR977-WQH

pay $25 per month toward restitution temporarily pending confirmation of her rent payments and her medical expenses by the Probation Officer.  The Probation Officer testified that she did not receive any confirmation of medical expenses but did receive confirmation of rent expenses.  The Probation Officer testified that Defendant has repeatedly maintained that she did not owe restitution; that the Defendant did agree to pay restitution; and that the records showed that the Defendant did send in payments of $25.00 a month.

The Probation Officer testified that she continued to have conversations with Defendant about the need to seek employment and that Defendant continued to explain that no one would hire her because she was a convicted felon.  The Probation Officer further explained that Defendant informed her that she wanted to move to the State of Washington as a part of her effort to seek employment.  The Probation Officer testified:

> Answer by Probation Officer: [Defendant] said that she has a valid and active Washington state license, contractor's license, and that she would provide me with proof of that, and that she had jobs waiting for her, and I then told her to send me verification of that.
> Question by counsel for Plaintiff: And, in fact, did she send you an email on August 22nd, 2013, in which she said she has a Washington contractors license and has been bidding on work in the state?
> Answer: Yes
> Question: Did you attempt to track down proof of that Washington state contractor's license that she claims that she had?
> Answer: Yes....
> Question: Did they all come up negative?
> Answer: Yes.
> Question: Did you tell Ms. Hannah that you looked for her license and you couldn't find it?
> Answer: Yes.
> Question: What did she say?
> Answer: She said that she definitely has one and that she would be forwarding me a copy and that she was surprised that I couldn't locate it.
> Question: And, in fact, on October 30th of that same year did she, in fact, send you a copy of what she claimed was her license?
> Answer: Yes. ...
> Question: Please take a look at Exhibit 4, and do you recognize this document? ...
> Answer: This is the document that Ms. Hannah had emailed me on or about October 30, 2013.... This is from the Washington State Department

1  of Revenue, State Business Records Database.[1]

2  Question: And did you later verify and try to basically re-create this search yourself to obtain the same license?
   Answer: Yes. ...

3  Question: Please look at Exhibit 5. Is that the same document based on your independent look up of that license?

4  Answer: Yes. ...

5  Question: Now looking at Exhibits 4 and 5, are there any differences between the one that Ms. Hanna emailed to you and the one that you found when you pulled it up?

6  Answer: Yes. It was clearly obvious to me that the document had been altered. The – under where it states "account closed" that had been erased,

7  and it did not reflect the date and time that the account was closed. And at the very bottom where it says "for noncommercial use only" that was

8  also erased.
   Question: Those were erased on the copy that Ms. Hannah sent to you?

9  Answer: Yes.

10  (ECF No. 158 at 21-24).

11  In addition to the testimony of the Probation Officer, the Government called

12  a legal assistant in the Financial Litigation Unit of the United States Attorney's Office.

13  The legal assistant testified that she was assigned to overseeing the payment of

14  Defendant's financial obligations, that Defendant contacted her telling her that she did

15  not owe restitution, and that she attempted to work with the Probation Office to obtain

16  a financial statement from the Defendant. The legal assistant testified that she attended

17  the meeting in October 2013 and that the parties came to an agreement to maintain the

18  Defendant's financial obligations at $25 a month for three months.

19  **CONTENTIONS OF THE PARTIES**

20  The Government contends that there is clear evidence that the Defendant

21  submitted an altered document to her Probation Officer in an effort to show that she had

22  an active contractor's license in the State of Washington. The Government contends

23  that the document was not a contractor's license and that it was altered by the Defendant

24  to support her false statement to her Probation Officer that she seeking work in the State

25  of Washington. The Government contends that alteration of documents is entirely

26

27  [1]The Probation Officer testified that the email from Defendant stated: "I attached the Washington documents. I went on line and to the Washington site, and they came

28  right up. The site is on the backs and the date and time I pulled them." (ECF No. 158 at 36).

consistent with the Defendant's prior criminal conduct and in clear violation of her condition of supervised release.  The Government asserts that the Defendant's misrepresentation was a part of her ongoing efforts to avoid employment and the payment of restitution.

Defendant contends that she has made good faith efforts to pay restitution and to secure employment.  Defendant asserts that her representation that she has a active contractor's license is the result of a misunderstanding.  Defendant explains that she had a business license and that she was able to bring it current by paying the outstanding balance.

## RULING OF THE COURT

18 U.S.C. § 3583(e)(3) provides that the Court may revoke a term of supervised release where it finds "by a preponderance of the evidence that the defendant violated a condition of supervised release."  18 U.S.C. § 3583(e)(3).

The evidence presented at the evidentiary hearing establishes by a preponderance that the Defendant altered a document from the Washington State Department of Revenue in an effort to advance her request to the Probation Officer to move to the State of Washington.  The Probation Officer credibly testified that Defendant requested permission to move to the State of Washington in order to pursue employment and that Defendant represented that she had an active contractor's license in furtherance of that request.  The Probation Officer attempted to verify the license and could find no evidence of a license.  The Probation Officer informed Defendant that she could not find a license.  Defendant then sent the Probation Officer an email in which Defendant stated that Defendant was able to go on line and pull the license right up.  Defendant attached the document admitted into the record as Government's Exhibit 4.  The Probation Officer thereafter obtained the document admitted into the record as Government's Exhibit 5 from the Washington State Department of Revenue.   A comparison of these documents shows clearly that the license sent by the Defendant to the Probation Office was altered by removing the words "ACCOUNT CLOSED :

09/30/2009 12:00:00 AM" and the words "FOR NON-COMMERCIAL USE ONLY." Government Exhibits 4 and 5.  These alterations were material to the representation made by Defendant to the Probation Officer that she had an active contractor's license in the State of Washington in support of Defendant's request to move to the State of Washington in order to obtain work.  When told by the Probation Officer that an active license could not be found, Defendant responded by emailing the Probation Officer an document altered by removing the closed date and the notice that the document was "FOR NON-COMMERCIAL USE ONLY." Government Exhibit 5.  In this case, Defendant was required by her Judgement of Conviction to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." (ECF No. 135 at 3).  The evidence shows conclusively that the Defendant falsely represented to the Probation Officer that she had an active Washington State contractor's license and that Defendant materially altered records of the Washington State Department of Revenue in order to further this misrepresentation.

### CONCLUSION

The Court finds that the evidence in the record shows by a preponderance of the evidence that Defendant committed allegation #3 in the Petition for a Warrant or Summons and violated the condition of supervised release that she "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." (ECF No. 135 at 3).  The Court does not find that allegation #1 and allegation #2 in the Petition were supported by a preponderance of the evidence.

Sentencing is set for Wednesday June 4, 2014 at 10 a.m. in Courtroom 14B.  Any sentencing materials shall be filed by June 3, 2014.

DATED:  May 28, 2014

**WILLIAM Q. HAYES**
United States District Judge